GEORGE PHILLIPS, plaintiff in error, vs. THE STATE OF GEORGIA, defendant in error.

[1.] Verdict supported by the evidence, independently of the testimony of the alleged accomplice.

[2.] An accomplice is a competent witness, and if corroborated by circumstances, a conviction may be had upon his testimony.

[3.] The credibility of a witness is for the jury.

Simple Larceny.  In Bibb Superior Court.  Tried before Judge Cole.  January Adjourned Term, 1866.

The indictment charged Phillips with stealing wine, pickled pork, egg-nog, abscinthe, brandy, powder, and tobacco, the property of the South-western Railroad Company.

It was proven that many articles of merchandize, amounting to $20,000 or $30,000, in value, among them powder, boxes, barrels and kegs of liquor, bacon, coffee, sugar, wines, cordials, boots, and shoes, dry goods, sardines, pickles, lobsters, and oysters, herrings, segars, and tabacco, and especially a case of smoking tobacco, had been lost by the South-western Railroad Company during the year 1865,—most of them in September, October, and November.  That near the last of November, search warrants were sued out against the defendant, who had been a watchman of the road, on duty in the yard at Macon, but who had left his situation about a week before that time, John Herrington, Sr., another watchman, John Hancock and Charles Hancock, train hands, and some others.  In Herrington's possession were found part of a sack of coffee, two or three pairs of shoes, a pair of boots, a car lock, with staple attached as drawn, marked S. W. R. R., part of a box of tobacco, and a box of tools.  The tools and one pair of shoes were identified by the Auditor of the company as Railroad property.  With John Hancock were found part of a box of tobacco, a keg of pecan nuts, and four boxes of herrings; and with Charles Hancock, a box of catawba wine.  It was the duty of the train hands to load and unload cars at all points on the road; and of the watchmen, to have a general oversight over the cars and yard, to protect the company from loss by stealing, fire, or otherwise.

It was proven that defendant carried to the shop of one Irby, near the South-western Railroad depot, two one pound packages of smoking tobacco; that John Hancock took some

herrings and pecan nuts, and Charles Hancock a box of wine, to the same shop; and that occasionally the defendant went to that shop in company with the two Hancocks.

A witness who lived in twenty or thirty feet of Herrington's residence, saw him carrying home things a great many times; saw defendant with him one night carrying a box, which he seemed to be changing into Herrington's hand, though the witness did not know that defendant "had the thing." It was about ten or eleven o'clock at night, and in the last of summer or first of the fall. He had seen a great many things carried to Herrington's house, and goods of various kinds exhibited there, particularly large quantities of sardines. He saw things carried in very frequently at night, but did not notice it in the day time. The witness observed particularly, because he knew Herrington was a watchman at the Railroad, and did not think he had a right to leave at night.

*William Scott* testified, "I was employed last year as day switchman for the South-western Railroad, in the city of Macon; also, as night switchman for a short time. I saw John Herrington, Sr., George Phillips, (defendant) John Hancock, and Lener Smith tear some boards off a car, enter, and fill a five-gallon keg and two jugs with liquor. I did not see which ones of them entered the car. After they came out Hancock took away one jug, Smith the other, and Herrington the keg, the last telling Phillips he would give him his next day. It was about eleven o'clock at night. They all seemed to be acting together. It was in the latter part of October, 1865. I saw Smith and Herrington enter cars several times at night. They unlocked cars to which they had keys. The liquor was worth about $21 to $25. I was considered a watchman, as well as a switchman, at the time the liquor was taken. I was talking with Phillips and Herrington. I did not get any of the liquor. I was arrested before Phillips was. I was under arrest when I had some conversation with Mr. Brantley. I told him about their going into the car and getting some liquor."

The jury returned a verdict of guilty; and the defendant moved for a new trial on the following grounds:

1. Because the Court refused to charge, as requested in writing, that one present at the commission of a crime, who offers no opposition, and makes no exposition of the act until himself arrested, is presumed to have aided and abetted.

2. Because the Court refused to charge, as requested in writing, that a person in charge of property, who is present at the commission of a larceny upon it, and who makes no opposition, and fails to expose the fact until himself under arrest, is presumed to have been a *particeps criminis.*

3. Because the jury found contrary to evidence and against the weight of evidence.

The Court refused a new tril, and the defendant excepted.

BACON, for plaintiff in error.

BASS, Solicitor General, *pro tem.*, for the State.

HARRIS, J.

If ingenuity in argument, and zeal and earnestness in defence of an unfortunate client, should entitle one to success, our young brother Bacon might claim, fairly, a new trial. In addition, a very touching appeal was made to us by the very distinguished gentleman, (Mr. A. H. Stephens) who represented Mr. Bacon in the concluding argument. The youth of Phillips; his volunteering before he had attained the military age, in the Confederate service; his continuance in it through the war, until the capitulation of its armies; his being disbanded at a distance from the rural home of his boyhood—where his poor, aged, and respectable parents still reside—without money, or friends to watch over or assist him to return to them; thrown suddenly amongst men who had been made reckless of right by war and its bad morals; that he was rather to be pitied for youthful indiscretion than punished for deliberate crime,—

were all presented in such a manner as to stimulate us to a very careful examination of the record, that if there could be found any material error, the prisoner might have its full benefit.

It pains us to say, that independently of the testimony of Scott, the watchman, whom it was sought by construction to make an accomplice, the complicity of accused in the larceny from the cars was sufficiently established to authorize the verdict of the jury.

Had Scott been held by the Judge to have been an accomplice, still, he would have been a competent witness; and upon his testimony, corroborated by circumstances, a verdict of guilty could be rendered, under our Code.

We coincide with the ruling of Judge Cole, that the objections made to Scott were matters which went to his credibility, and to be decided by the jury, and did not affect his competency.

The long and successful administration of this veteran of the circuit bench, together with a personal knowledge of his remarkable assiduity and caution in investigation, entitle his opinions, at all times, to the highest respect; and I do not hesitate to say, that nothing but a very strong conviction of error would induce a dissent to any judgment rendered by him.

Judgment affirmed.